172 So. 911

PRUETT v. STATE.

7 Div. 260.

Court of Appeals of Alabama.

March 2, 1937.

Merrill, Jones & Whiteside, of Anniston, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The judgment entry in this case discloses the fact that this appellant is a white woman, 21 years of age. She was indicted at the February term, 1935, of the circuit court charged with the offense of assault with intent to murder James Boner, and her trial upon said indictment was had on the 4th day of June, 1936. The trial resulted in her conviction, as charged, and she was thereupon sentenced by the court to serve an indeterminate term of imprisonment in the penitentiary for not less than two years, or more than ten years. This appeal was taken from the judgment of conviction pronounced and entered.

Jointly indicted with this appellant was one Chauncey Hase, but he was not on trial, the court having ordered a severance.

The evidence, on the trial below, tended to show that the alleged injured party, James Boner, was upon the night in question working at a place of business, where he was employed, on the Bankhead highway known as the "Duck Inn," in Calhoun county. That about 9 p. m. this appellant and her coindictee, Chauncey Hase, and also a young woman by the name of Flora Roberts, drove up near the place of business in question, in a car, Hase blew the horn and to the attendant who answered said, "I want to see James Boner." Boner

at the time was busy. After a short while the horn blew again, upon which Boner, who being informed that he was wanted on the outside, went out to the car, and while engaged in a conversation with Hase, was shot by this appellant; that she fired three shots at him with a 32 caliber Smith & Wesson pistol, from the rear seat of the automobile, two of which shots took effect, one shot hitting him in the breast and one in his finger; he was carried to a hospital where his wounds were dressed. The State contended that the shooting was unprovoked and offered evidence tending to show motive upon the part of appellant and Hase. In this connection numerous objections were interposed and exceptions reserved to the court's rulings. There appears no semblance of error in any of the rulings complained of. The question of motive, or that is, evidence thereof, is not indispensable to a conviction, it not being an element of the burden of proof devolving upon the prosecution. But it is always permissible for the State to prove facts which tend to show a motive for the commission of the offense. In this connection there is vested in the trial court an inherent discretion, especially on cross-examination to allow testimony to this end and to show intimate or other relations of the parties for the consideration of the jury on this question. The evidence along this line tended to show that the accused, Hase, was a married man, and was frequently in the company and often visited this appellant at her home. The appellant is a single woman. Further, that Hase had formerly been convicted for the offense of receiving stolen property, and that he labored under the impression that Boner, the injured man, had "turned him up," and was otherwise responsible for his conviction of the crime stated. This testimony was properly allowed for the consideration of the jury, and in explanation of the murderous attack upon Boner, no other reason for the shooting was apparent, for the evidence without dispute disclosed that this woman, appellant, began shooting at Boner without any words of any kind passing between them at the time. Boner testified, among other things: "In January of last year I was working at a place called the Duck Inn on the Bankhead Highway. I knew Chauncey Hase and Dollie Pruett, and have known them four or five years. This girl over here is Dollie Pruett. Those two people were at Duck Inn one night in January when I was shot.

That was about nine o'clock that night. A short time before I was shot I heard a car stop in front of the Duck Inn. I was working there at the time and told Peg Pugh to see what they wanted. I was fixing some sandwiches. Peg Pugh went out to see what they wanted. He came back and said Chauncey Hase wanted to see me, and I told him to go tell him I was busy. He was gone two or three minutes and then came back. He said Chauncey Hase said for me to come out there, that he wanted to see me. I finished making the sandwiches and went out to see what he wanted. The car was about 50 feet from the door. The engine was not running. Chauncey Hase was standing on the ground at the front wheel. The car was headed west. When I first walked up I did not see anyone else in the car. I asked him what he wanted, and he said who is this, and I asked him if he didn't know me and he said yes, this is old Jim, and he laid his right arm on my shoulder. I did not see anyone else in the car at that time. He said what did you come to my place the other day for and talk to me like you did and I told him I did not do anything more than anyone else would have done, that I did not want to get into any trouble about something I did not do. He said that is all right, I still like you anyway. I smelled whiskey. Just as he said that Dollie Pruett raised up out of the back seat and went to shooting. That was the first time I saw her. I was not more than four feet away when she started shooting. She hit me in the right chest the first time and then in the finger. The third shot did not hit me. I went in the stand and the car drove off. They took me to the hospital and dressed my wounds. I couldn't see any more than the bulk of the pistol as she raised it. She did not speak. That happened at Duck Inn, a barbecue stand and tourist camp, about 3 miles out of town. Mr. Hampton operated it at the time."

The foregoing testimony was relevant likewise, as of the res gestæ, and the objections made and exceptions reserved to the court's rulings are without merit and cannot be sustained. The same applies to the rulings of the court as to other witnesses, but we refrain from discussing each of the numerous questions as not being necessary in this case.

No special written charges appear to have been requested. The court's oral charge is set out in full, as the law requires. This charge was able, clear, full, and concise, and properly stated every phase of the law applicable to this case.

 There appears in the record proper a motion for a new trial based upon several grounds. On this appeal, however, we are not authorized to consider and determine the court's action in this connection, as the question is not presented for review, as no mention thereof appears in the bill of exceptions and no ruling of the court in this connection is shown. As has been many times held, and as the mandatory provisions of the statute (section 6088, Code 1923) requires, in order to present for review the action of the trial court on motions for a new trial, it is not necessary that the motion for new trial and the judgment of the court thereon shall be set out in the bill of exceptions; but under the statute, supra, it is mandatory that the bill of exceptions must contain a sufficient recital to show the making of such motion, the ruling of the court thereon, and an exception thereto. As stated, no effort to this end appears in the bill of exceptions, hence this question is not presented for review.

The record in this case is regular. No reversible error appearing in any of the court's rulings, the judgment of conviction appealed from will stand affirmed.

Affirmed.